UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Spitzer Management, Inc., *et al.*, | ) | CASE NO. 1:13 CV 2184 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Interactive Brokers, LLC, *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

### Introduction

This matter is before the Court upon defendants' motions to dismiss (Docs. 7, 8, 21). Plaintiffs seek relief from defendants based on their connection with a fraudulent tax preparatory scheme perpetrated by one of their customers and his company. For the following reasons, defendants' motions are GRANTED.

### Facts

The following facts are taken from plaintiffs' complaint. Plaintiffs are twelve organizations that had contracts with Ben-Tax, Inc. ("Ben-Tax") for payroll tax services. Ben-Tax was owned solely by Richard Zakarian ("Zakarian").

Ben-Tax opened three bank accounts at defendant Fifth Third Bank ("Fifth Third") in

1

April 2010. One was a general business account, one was an escrow account, and the third was labeled as a "Tax" account. In December 2010, Ben-Tax opened three additional bank accounts—another general business account, an escrow account, and a "Tax" account—at defendant Lorain National Bank ("LNB"). Plaintiffs transferred their funds directly to Ben-Tax's accounts at Fifth Third and LNB based on the representation that the funds would be paid to the Internal Revenue Service and state taxing authorities for payroll taxes owed by plaintiffs.

Between January 2011 and August 2012, Ben-Tax requested both LNB and Fifth Third to transfer money each month from Ben-Tax's "Tax" accounts at each bank to Ben-Tax's brokerage account at defendant Interactive Brokers LLC ("Interactive Brokers"). These funds were then invested and lost in speculative commodity and futures contracts. Zakarin also made other transfers from the "Tax" accounts to Ben-Tax's business accounts, which were used for his personal and business expenses. Approximately two million dollars of plaintiffs' funds were never transferred to the IRS or any state taxing authority.

After Zakarian's scheme came to light in August 2012, he plead guilty to federal charges of wire fraud, mail fraud, and making false income tax returns. Plaintiffs obtained judgements against Zakarian and Ben-Tax based on the claim that they had obtained plaintiffs' state and federal payroll taxes pursuant to a fraudulent scheme.

Plaintiffs thereafter filed this complaint against defendants Fifth Third, LNB and Interactive Brokers. This matter was originally filed in the Lorain County Court of Common Pleas and removed to this Court on the basis of federal question jurisdiction. The Complaint sets forth three claims based on state and federal law. Claim one is a claim for breach of federal statutory duties. Claim two is a claim for breach of fiduciary duties. Claim three is a claim for

negligence.

This matter is before the Court upon defendants', Fifth Third, LNB and Interactive Brokers, individual motions to dismiss the complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs oppose their motions.

**Standard of Review**

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445, at *1 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256, at *3 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997)). "To survive a Rule 12(b)(6) motion, the nonmoving party must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *ABS Industries, Inc. ex rel. ABS Litigation Trust v. Fifth Third Bank,* 2009 WL 1811915, at *3 (6th Cir. June 25, 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

**Discussion**

**1. Federal Statutory Claims**

Plaintiffs claim that LNB and Fifth Third (collectively "the banks") have violated their statutory duties under the Patriot Act and the Banking Secrecy Act. Plaintiffs contend that under these statutes the banks had a duty to monitor the accounts at their respective institutions and that their failure to monitor these accounts resulted in the diversion of plaintiffs' payroll tax money. Plaintiffs contend that Interactive Brokers failed in its statutory duty under the Patriot Act to monitor Ben-Tax's account for signs of money laundering. Defendants respond that under the Patriot Act and the Banking Secrecy Act they owed a duty to monitor to the United States and not to plaintiffs. They contend that these laws do not create a private right of action and the statutes do not give rise to a duty of care owed to plaintiffs.

The Patriot Act and the Banking Secrecy Act obligate financial institutions to monitor their accounts for suspicious activity indicative of money laundering and other criminal or terrorist activities. *See* Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism ("Patriot Act") Act of 2001, Pub.L. No. 107–56, 115 Stat. 272 (2001); 31 U.S.C. § 5318. The duty to monitor and report suspicious activity under these statutes is owed to the government of the United States. *Marlin v. Moody National Bank, N.A.*, No. H-04-4443, 2006 U.S. Dist Lexis 57736, at *18 (S.D. Tex. Aug, 16, 2006). Neither of these statutes creates a private cause of action, a fact which plaintiffs acknowledge in their brief. (Doc. 23 p. 4). *See e.g.*, *id.* at *18 ("[The Bank Secrecy Act] does not create a private right of action[.]"); *Ray v. First Nat. Bank of Omaha*, 413 F. App'x 427, 430 (3d Cir. 2011) ("[T]he Patriot Act does not provide for a private right of action for its enforcement."). And no court has found that these monitoring requirements give rise to a duty of care owed to individual plaintiffs. *See e.g.*, *In re Agape Litig.*, 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010) ("[B]ecause the Bank

Secrecy Act does not create a private right of action, the Court can perceive no sound reason to recognize a duty of care that is predicated upon the statute's monitoring requirements."); *Armstrong v. Am. Pallet Leasing Inc.*, 678 F. Supp. 2d 827, 874 (N.D. Iowa 2009) (finding no duty of care under the Banking Secrecy Act or Patriot Act owed by bank who had transferred money from corporate account to embezzler's personal account). Plaintiffs, therefore, cannot state a claim for violation of a statutory duty owed to them.

Plaintiffs contend "not that they have a direct cause of action against [the banks] under these laws, but rather that Defendant banks had a duty to monitor the "Tax" accounts set up by Ben-Tax." (Doc. 23 p. 5). Plaintiffs have provided the Court with no case, however, that supports their apparent contention that they may sue to enforce this duty owed to the United States under these statutes. The Court has likewise been unable to locate any. Consequently, plaintiffs' claims against the banks for breach of statutory duties under the Patriot Act and Banking Secrecy Act must be dismissed.

In support of their claim for violation of statutory duties under the Patriot Act by Interactive Brokers, plaintiffs cite two cases. In *Bear Stearns*, individuals invested money with an investment advisor who opened an account with Bear Stearns. *Bear Stearns & Co . v. Buehler*, 432 F. Supp. 2d 1024 (C.D. Cal. 2000). After the investment advisor stole $7 million of the plaintiffs' money and was imprisoned, plaintiffs brought an action against Bear Stearns. *Id.* at 1026. Having agreed to arbitration, the arbitrator entered an award for the plaintiffs based on claims of negligence and breach of fiduciary duty. *Id.* Reviewing the arbitration award under the Federal Arbitration Act, the district court upheld the award, finding the arbitrators did not manifestly disregard the law by concluding that the brokerage house owed a duty to the

5

plaintiffs. *Id*. at 1028-29. Plaintiff also points to *City of Atascadero*, cited in *Bear, Stearns & Co.* in support of its claim. *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th  445, 80 Cal. Rptr. 2d 329 (1998). There, several cities deposited funds in a pool run by the county treasurer. *Id.* at 453. After the pool collapsed, the cities sued the county's financial broker, Merrill Lynch. *Id.* The court allowed the case to proceed against Merrill Lynch, since the cities had adequately plead that Merrill Lynch had actively participated with a trustee in breach of the trustee's duty to a trust, made public statements to conceal the risks of investing in the pool, mislead the plaintiffs, and advanced their own monetary interests through self-dealing. *Id.* at 484

Neither of these cases, however, persuades the Court that Interactive Brokers owed a federal statutory duty to plaintiffs. Both are readily distinguishable in their factual situations. But moreover, the courts in both cases allowed suits against the brokerage firms for breach of fiduciary duties, not for breach of any federal statutory duty. The Court finds that plaintiffs' claim fails to state a claim for violation of statutory duties upon which relief may be granted.

**2. Breach of Fiduciary Duty**

In general, banks do not owe fiduciary duties to their customers. *Groob v. KeyBank*, 843 N.E.2d 1170, 1173-74 (Ohio 2005). However, when both parties understand that a special trust has been created a fiduciary relationship may be established. *Id.* at 1173 (citing *Umbaugh Pole Bldg. Co., Inc. v. Scott*, 390 N.E.2d 320 (Ohio 1979)).

Plaintiffs contend that the designated "Tax" accounts created a special trust between the banks and plaintiffs because these accounts were special depository accounts.[1] "To create a

---

[1] Plaintiffs do not opposes Interactive Brokers' motion as to this claim.

special deposit, the depositor and the bank at the time the deposit is made must intend and agree, expressly or by implication, that such deposit shall remain segregated and not be commingled with or made a part of the general funds of the bank[.]" *Union Properties, Inc. v. Baldwin Bros. Co.*, 141 Ohio St. 303, 311 (Ohio 1943). However, the mere establishment of an account to pay taxes is insufficient to create a fiduciary relationship between a bank and an account holder. *Portman v. Akron Sav. & Loan Co.*, 1977 Ohio App. Lexis 9957 (Ohio Ct. App., Summit County Sept. 14, 1977) (finding that because plaintiff failed to communicate that tax money held "in trust" by defendant bank was to be a special deposit no fiduciary relationship had been created). Absent an agreement between the bank and its customer, the presumption is that the deposits are general not special. *Union Properties*, 141 Ohio St. at 309. And these deposits do not give rise to a fiduciary relationship. *Id.* at 310.

Plaintiffs' complaint does not allege that Zakarin or Ben-Tax entered into any understanding with either bank that the "Tax" accounts would be special deposits with their funds segregated from the rest of those at the banks. Plaintiffs assert that the banks knew that the funds in the "Tax" accounts were not "general" funds to be used by Ben-Tax. However, the "[m]ere knowledge by the bank of the purpose for which the deposit was made will not make the deposit either special or for a specific purpose unless the bank has agreed thereto." *Id*. at 311. As such, there was no fiduciary relationship between the banks and Zakarin. Even were there one, plaintiffs have cited no case that would extend a sparsely-arising fiduciary duty owed to a bank's customer to third parties like plaintiffs.

"If no fiduciary relationship is created by written contract, one may be found to have been created informally, 'but this is done only when both parties understand that a special trust

7

of confidence has been reposed.'" *Collier v. Ocwen Loan Servicing, LLC*, No. 5:12 CV 2937, 2013 U.S. Dist Lexis 98630, at *18-19 (N.D. Ohio July 15, 2013) (internal citation omitted). Plaintiffs' complaint does not allege any interaction between plaintiffs and the banks other than the transfers from plaintiffs' accounts to Ben-Tax's accounts at the banks. The understanding that a special trust has been created between parties by necessity requires some communication between them, communications that are lacking in this case. Plaintiffs' complaint lacks sufficient facts to substantiate the existence of an informally created fiduciary relationship. Consequently, the claims against the LNB, Fifth Third, and Interactive Brokers for breach of fiduciary duty are dismissed.

### 3. Negligence

Plaintiffs' claims for negligence against all three defendants likewise fail. Under Ohio law, the plaintiff must prove the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom to establish a claim of negligence. *Feldman v. Howard,* 10 Ohio St.2d 189, 226 N.E.2d 564, 567 (Ohio 1967).

Ohio follows the prevailing rule that a bank does not owe a duty of care to a person who is not a customer. *Parlin Fund LLC v. Citibank N.A.*, 1:13-CV-111, 2013 WL 3934997 (S.D. Ohio July 30, 2013). "The reasoning behind this rule is simple and sensible—if banks owed duties to non-customers, they would be exposed to 'unlimited liability for unforeseeable frauds.'" *Driessen v. Woodforest Nat. Bank*, 940 F. Supp. 2d 584, 591 (S.D. Ohio 2013) (quoting *Eisenberg v. Wachovia Bank, N.A.,* 301 F.3d 220, 226 (4th Cir. 2002)). Here, the banks only had a relationship with Ben-Tax, not with plaintiffs. Plaintiffs' claims are the kind of unforeseeable liability that the rule was meant to protect against.

Plaintiffs rely on Ohio Revised Code § 1109.05(E) to support their negligence claim. That section states:

> A bank may serve as a depository for public funds of this state, other states of the United States, political subdivisions of this state and other states of the United States, the United States, agencies of the United States, foreign nations, political subdivisions of foreign nations, multinational organizations, and subdivisions of multinational organizations.

Plaintiffs' reliance is flawed. The plain meaning of that section is that it allows banks to serve as depositories for funds belonging to governmental divisions. Plaintiffs' payroll taxes had not been paid so they were not public funds. Assuming they were public funds, plaintiffs still fail to explain how this statute creates a duty owed to them. The Court finds that the banks did not owe a duty to plaintiffs. Therefore, plaintiffs' claim for negligence against LNB and Fifth Third must be dismissed.

Similarly, plaintiffs fail to establish that Interactive Brokers owed plaintiffs any duty. As with a bank, a duty of care for a broker only aries when the broker does business with the plaintiff. *See e.g.*, *In re Agape Litig.*, 681 F. Supp. 2d 352, 357-58 (E.D.N.Y. 2010) ("It is well-established that brokers . . . do not owe a general duty of care to the public at large."); *Nicholas v. Saul Stone & Co. LLC,* No. 97–860, 1998 U.S. Dist. LEXIS 22977, *62–*65, 1998 WL 34111036 (D.N.J. June 30, 1998) (finding that a broker-dealer did not owe a duty to a non-customer for claims that the broker-dealer was negligent in failing to detect and prevent fraudulent schemes perpetrated by its customer).  Plaintiffs, while they did business with Ben-Tax, did not do business with Interactive Brokers.

Plaintiffs rely on *Chaney v. Dreyfus Service Corp.* to support the existence of a duty. 595 F.3d 219 (5th Cir. 2010). There, plaintiff insurance companies sought recovery from a broker-dealer, DSC, after its customer broker-dealer committed fraud. *Id.* at 225-28. Construing New

York law, the court in *Chaney* reasoned that with respect to sub-accounts registered under plaintiff insurance companies' names there was a triable issue of fact as to whether DSC had breached a duty to determine if redemption of funds in those accounts were authorized. *Id.* at 235. The court reasoned that because DSC had sent the insurance companies monthly statements and confirmation of account activity, the expansion of the duty of care would "hardly be crippling" because the insurance companies were well-enough known to DSC, although they were not customers. *Id.* at 231. However, with regard to funds from the insurance companies located in accounts in the name of the embezzling broker-dealer, the court determined that there was no duty to inquire and prevent a diversion. *Id*. at 234.

In the present case, the accounts from which Interactive Brokers received funds at the banks belonged to Ben-Tax and did not identify plaintiffs to Interactive Brokers. The Court cannot say that expansion of a duty of care to non-customers like plaintiffs, whose identities are unknown to broker-dealers, would "hardly be crippling." Consequently, *Chaney* does not persuade the Court that Interactive Brokers owed a duty to plaintiffs. The claim for negligence against Interactive Brokers must, therefore, be dismissed.

### Conclusion

For the foregoing reasons, defendants' motions to dismiss are GRANTED. The case is DISMISSED and judgment is entered in favor of defendants as to all claims set forth against them in plaintiffs' complaint.

IT IS SO ORDERED.

                                          /s/ Patricia A. Gaughan
                                          PATRICIA A. GAUGHAN
Dated: 12/20/13                   United States District Judge